IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN A. MICHAEL, | ) | CASE NO. 4:09 CV 321 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J.ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Jonathan A. Michael's application for Disability Insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION and PROCEDURAL HISTORY

In November 2004, Plaintiff filed applications for DIB and SSI, alleging that he had been disabled since July 2002, due to diabetes and depression (Tr. 14, 42). Plaintiff's date last insured for purposes of the DIB application was December 31, 2007 (Tr. 15, 17). The state agency

1

denied Plaintiff's applications, and Plaintiff did not appeal the determination (Tr. 64-69, 778-83). Plaintiff filed new applications for DIB and SSI in August 2005, again alleging that he had been disabled since July 2002 due to diabetes and depression (Tr. 76-78, 773-77). Plaintiff's claims were denied initially and upon reconsideration (Tr. 57-58, 61-63). Plaintiff requested a hearing and, in September 2008, appeared with counsel and testified before Administrative Law Judge William J. Reddy (the "ALJ") (Tr. 784-807). Vocational Expert Margaret Preno (the "VE") also appeared and testified at Plaintiff's hearing (Tr. 803-07). The ALJ subsequently issued a written decision finding that Plaintiff was not disabled (Tr. 14-26). In making his decision, the ALJ followed the familiar five-step sequential evaluation[1] and found at Step Five

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2) If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3) If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

that Plaintiff's residual functional capacity ("RFC") for a range of light work allowed him to perform a significant number of jobs in the national economy (Tr. 13-21). In January 2009, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 6-8). On appeal, Plaintiff claims that the ALJ erred: (1) by failing to properly evaluate his credibility; and (2) by relying improperly on the VE's testimony in response to a hypothetical that did not accurately portray his limitations.

Born on November 10, 1973, Plaintiff was 33 years old at the time of the ALJ's determination and was at all times a "younger individual" for purposes of the Social Security regulations (Tr. 76). See 20 C.F.R. §§404.1563, 416.963. Plaintiff completed the twelfth grade and has past relevant work as a stock boy in a warehouse, as a cook/crew leader at a restaurant, and in the mail room at a newspaper company as a laborer and journeyman (Tr. 85, 91).

## II. DISABILITY STANDARD

A claimant is entitled to receive DIB and/or SSI benefits only when he establishes disability within the meaning of the Social Security Act. See 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." See 20 C.F.R. §§ 404.1505; 416.905.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the

proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

### A. Whether the ALJ Properly Considered Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing his credibility by failing to discuss the factors set forth in Social Security Ruling 96-7p and by failing to accept as valid several of Plaintiff's statements regarding his limitations – in particular, his alleged inability to walk more

than 60 or 70 yards without having to sit; his inability to stand more than 1 to 1 ½ hours without having to sit; and his inability to sit for more than one hour without having to stand.

"[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). A reviewing court should "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.*

Yet, SSR 96-7p provides that an ALJ's credibility determination "must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *See also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). SSR 96-7p and the regulations set forth various factors that an ALJ should consider in evaluating a claimant's alleged symptoms. This non-exhaustive list of factors includes: the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. SSR 96-7p; 20 C.F.R. §§ 416.929; 404.1529

In this case, the ALJ expressly stated that he considered all of Plaintiff's symptoms and the extent to which those symptoms were consistent with the other evidence in the record, in accordance with 20 C.F.R. §§ 404.1529 and 416.929, as well as with SSR 96-7p (Tr. 24). The ALJ then found that although Plaintiff's "medically determinable impairments could reasonably

be expected to produce the alleged symptoms [ . . . Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained in Finding #4" (Tr. 24). In Finding #4, the ALJ discusses in great detail the medical evidence and Plaintiff's assertions regarding his symptoms, as well as many of the factors set forth in SSR 96-7p. For instance, the ALJ summarizes Plaintiff's statements regarding his activities, his complaints about his physical symptoms and what measures he takes to alleviate those symptoms as follows:

> The claimant testified that he takes insulin shots for his diabetes. He had an insulin pump installed in 2007, but it was removed 2 weeks later (the doctor did not accept Medicaid). He currently sees Dr. Ramamurthy Alam, a primary care physician, twice a month for his diabetes. He has "real" high and "real" low blood sugars. He has episodes daily, twice a day, which can last all day, if his blood sugar is low. When he has these episodes, he checks his blood sugars and tries to correct them the best he can. If his blood sugar is high for a couple of hours, he feels better, but he is still tired, disoriented, and weak for the rest of the day. He has had neuropathy in his feet and hands for the last couple of years, and it is getting bad. He has been taking Lyrica for about the same amount of time, but it does not seem to help. He cannot lift heavy items. He can lift about 40 pounds, limited by pain in his feet and hands from neuropathy. He can walk about 60-70 yards, and then gets bad pain. He can stand an hour and a half, and then his legs start cramping and his feet get numb and tingly, and he sits till it passes. He can sit about an hour, and then his legs start cramping up. He lives with his parents, age 65 and 60, and they are not in good health, both with heart conditions. He does not do many chores around the house. His mother does the laundry, but he could probably do it. He has a car and drives short distances. He goes to the grocery store with his mother. He has a 7-year-old son who is with him every other weekend; they usually just stay around the house, but he plays with him when he is able

(Tr. 19).

The ALJ then indicates that although the medical evidence reflects that Plaintiff "has a history of severe diabetes mellitus since December 2002, with high and low blood sugars not

well controlled by diet, insulin, and oral medications" and that Plaintiff has been hospitalized multiple times for diabetic ketoacidosis, Plaintiff's allegations regarding the severity of his symptoms are not confirmed by the record (Tr. 19). For instance, the ALJ states that "[d]iabetic care medical records from Dr. Paul Rosman covering September 2006 to June 2007 (Ex. 17F) do not document the extremely frequent or extremely high or low blood sugar fluctuations, e.g., 500 to 23, as have been alleged by the claimant and/or as reportedly recorded in his diabetic diary" (Tr. 19). In making this finding, the ALJ notes that Plaintiff's blood sugar levels have been elevated, but that his reported average is about 200. He also notes Plaintiff's report in November 2006 that "his blood sugars are fluctuating but not as bad," as well as Plaintiff's reports in March 2007 that he had a "few lows" that week, in and June 2007 that he had "two lows" that week (Tr. 19). The ALJ also notes that "Dr. Rosman's records for this period indicate symptoms of numbness and tingling in the hands and feet, somewhat improved with Lyrica medications, but do not establish severe diabetic neuropathy with deficits in gross and dextrous movements, or of gait and station, or other significant diabetic complications" (Tr. 19). The ALJ further documents the records from Plaintiff's podiatrist, Dr. Fonagy, whom Plaintiff saw for chronic right foot pain. He then notes Dr. Fonagy's report that Plaintiff was able to ambulate without assistance (Tr. 19).

Later in the written decision, in finding that Plaintiff retained the capacity for a limited range of light work, the ALJ stated that

> Although I also reject the claimant's subjective complaints, and the arguments of his representative, that he is "disabled" because of very frequent and very high and low blood sugars, as not supported by his objective medical evidence, I have, nonetheless, given significant weight to the claimant's subjective complaints . . . to the extent that I find here that he cannot perform more than light exertional

activities on a sustained basis because of his diabetes, diabetic neuropathy, and a limited range of motion in his left index finger.

With regard to Plaintiff's mental limitations, the ALJ stated that:

> I have accorded substantial weight to the clinical findings and GAF scores of 55-60 reported by his treating psychiatrists, Dr. Sargious and Dr. Kelkot, and by Mr. Degli, an examining psychologist. I have accorded only partial weight to the assessments by the State agency reviewing psychologists, and have accorded partial weight to the claimant's subjective complaints, by assessing "moderate," rather than "mild," limitations in the areas of social functioning as well as concentration, persistence and pace.

(Tr. 24).

In the portion of Finding #4 – the ALJ's articulated basis for the credibility finding – dealing with Plaintiff's mental limitations, the ALJ notes Plaintiff's complaints that he gets very nervous and shaky around new people and crowds; that he forgets things; and that he has trouble concentrating (Tr. 21). The ALJ also summarizes the medical findings and opinion evidence, wherein various examining and reviewing sources found that Plaintiff has only moderate and mild limitations in mental functioning. Further, as the ALJ notes, no treating medical source has provided any statement regarding the severity and functionally limiting effects of Plaintiff's mental impairments. He then states that his assessment of moderate limitations "is consistent with his evaluation and treatment history, his mental status findings, his diagnoses, and his GAF scores reported by Dr. Sargious, Dr. Klekot, and Mr. Degli, as detailed above" (Tr. 21). He also notes in making these findings claimant's testimony as well as his history of domestic and legal problems.

      The court finds, based on the above, that the ALJ articulated adequately the reasons for his credibility finding and that the ALJ therefore complied with SSR 96-7p. The court also notes

in so finding that an ALJ need not mention every piece of evidence in the record in order to comply with SSR 96-7p and the regulations. Indeed, it is well-settled that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Plaintiff also alleges that all of Defendant's attempts to support the ALJ's credibility determination consist of *post hoc* rationalizations. For instance, Plaintiff complains that the ALJ did not provide any support directly for his credibility finding, and that much of the evidence to which Defendant now cites in support of the ALJ appears in the discussion regarding whether Plaintiff met a listed impairment, or in portions of the record that the ALJ did not mention at all. Plaintiff further complains that the ALJ fails to explain in this part of his decision – or any other – why Plaintiff's testimony should not be believed.

Plaintiff is correct that Finding #4 – to which the ALJ cites as support for his credibility finding – is framed in terms of whether or not Plaintiff has an impairment or combination of impairments that meets or medically equals one of the listed impairments. However, this fact does not indicate necessarily that the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence, but only that the ALJ's written decision might have been better organized. In this case, the ALJ clearly indicated that he made his credibility finding on the basis of his discussion in Finding #4. In this section, as well as throughout his written decision, the ALJ discussed the medical evidence and most, if not all, of the factors set forth in SSR-96-7p, including Plaintiff's statements regarding his daily activities, the frequency and duration of

his symptoms, and the types of treatments and medications he receives to alleviate his symptoms. Although laid out in a somewhat unusual way, the ALJ's analysis ultimately was "sufficiently specific to make clear to [Plaintiff] and any subsequent reviewers the weight [the ALJ] gave to [Plaintiff]'s statements and the reasons for that weight." *See* SSR 96-7p. Because the court finds, based on the above, that the ALJ's written determination regarding Plaintiff's credibility is sufficient to comply with SSR 96-7p and the regulations, Plaintiff's arguments that Defendant relies exclusively on post hoc rationalizations to support the credibility finding are not persuasive. Thus, the court finds that the ALJ did not err in assessing Plaintiff's credibility.

### B. Whether the ALJ Erred by Relying on the VE's Testimony in Response to a Hypothetical That Did Not Accurately Represent His Limitations.

Plaintiff also argues that the ALJ improperly relied on the VE's testimony in determining that Plaintiff was not disabled because the hypothetical posed to the VE, and subsequently adopted as Plaintiff's RFC, did not take into account the full extent of his limitations.

Under *Varley v. Sec. of Health and Hum. Serv.*, 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" "If the hypothetical question does not accurately portray Plaintiff's physical and mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work." *Lancaster v. Comm'r of Soc. Sec.*, 2007 WL 1228667, at *9 (6th Cir. 2007). "However in formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *Gant v. Comm'r*

*of Soc. Sec.*, 2010 WL 1378427, at *3 (6th Cir. Apr. 7, 2010) (citing *Stanley v. Sec. of Health and Hum. Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)).

The ALJ asked the VE to consider three hypothetical individuals in this case. The first was an individual with Plaintiff's vocational characteristics who could perform light work exertionally with the following limitations: only simple, routine tasks; moderate limitations in concentration, persistence and pace; no more than occasional contact with supervisors and fellow employees; and no contact with the public (Tr. 804). The VE testified that such an individual could perform a number of light, unskilled jobs, such as cleaner and packager (Tr. 804-05). The ALJ then asked the VE to consider an individual limited to sedentary work with the same non-exertional limitations 9Tr. 805). The VE testified that such an individual could perform a number of unskilled, sedentary jobs such as assembler and packager (Tr. 805). Finally, the ALJ asked the VE to assume that all of Plaintiff's testimony, including his statements regarding the episodes he claims to experience on a daily basis, was fully credible (Tr. 806). The VE testified that such a person would not be able to sustain work existing in significant numbers in the economy (Tr. 806). In explanation of her response, the VE stated that Plaintiff's testimony was that his blood sugars can go as high as 500 and as low as 23; that when his blood sugars are high he is disoriented; that when his sugars are low, he is shaky and unable to function; that he experiences these episodes on a daily basis; and that his sugars are uncontrollable (Tr. 806).

In his written decision, the ALJ determined that Plaintiff has the RFC to perform light exertional work with the following limitations: only simple, routine tasks secondary to moderate limitations in concentration, persistence and pace; no more than occasional contact with supervisors and fellow employees; and no contact with the public (Tr. 23). This RFC finding

mirrored the first hypothetical the ALJ posed to the VE (Tr. 23, 804). The ALJ then found, based on the VE's testimony in response to the first hypothetical, that Plaintiff could perform a number of jobs existing in significant numbers in the national economy, and therefore, was not disabled (Tr. 25).

Plaintiff argues that the ALJ erred in relying on the VE's testimony in this case because the hypothetical upon which the ALJ relied in formulating Plaintiff's RFC did not account for his alleged inabilities to walk more than 60 to 70 yards, to stand more than 1-1 ½ hours, and to sit for over an hour. Plaintiff's argument with respect to this issue essentially is that the ALJ erred by failing to credit some of his testimony. As Plaintiff notes, when the ALJ asked the VE to consider all of Plaintiff's alleged limitations as true, the VE testified that no jobs would be available to such an individual. However, the ALJ found that Plaintiff was not fully credible and, for the reasons stated above, substantial evidence supports the ALJ's credibility determination. Because the ALJ was justified in omitting from the hypothetical upon which he ultimately relied those alleged limitations that he found not to be supported by the evidence, the ALJ did not err in relying on VE's testimony in response.

## V.  RECOMMENDATION

For the foregoing reasons, the court finds that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled.  Accordingly, the Court recommends that the decision of the ALJ be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 28, 2010.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R.72.3.  Failure to file objections within the specified time may constitute a WAIVER of the right to appeal the Magistrate Judge's recommendation.